Good afternoon, Illinois Appellate Court, 1st District Court is now in session. The 6th Division, the Honorable Justice Sharon O. Johnson presiding, case number 23-0833, Philadelphia Indemnity Insurance Company v. Gonzalez. Good afternoon and welcome to the 6th Division of the Illinois Appellate Court, 1st District. We are going to begin by having me and my colleagues introduce ourselves. I'm Justice Sharon O. Johnson, presiding judge. I am joined by my colleagues, Justice Michael B. Hyman and Justice Carl A. Walker. You will each be given 20 minutes in which to present your argument on today with the appellant being given the opportunity to reserve time for rebuttal. So can I have the appellant's counsel first put your appearance on the record. Good afternoon, Justices. I'm Matthew Paula Castro of Cozen O'Connor on behalf of the appellant, Philadelphia Indemnity Insurance Company. Okay. And would you like to reserve any time for rebuttal? Yes. Can I have, can I reserve five minutes for rebuttal? Sure. So you'll do 15 and five. And counsel for the appellee, please state your appearance for the record. Eleanor Rourke for Defendant Norenak-Gonzalez. Okay. Very well. Thank you very much. Attorney Paula Castro, you may begin. Good afternoon, Justices. And may it please the court, as I mentioned earlier, Matthew Paula Castro on behalf of the appellant. I appreciate your consideration of our briefs today. The issue presented before this court is an interesting one. And it's one that asks whether a tenant under the circumstances of this case is responsible for damage to its landlord for damage caused outside of their leased unit of origin. This case relates to a fire, a small fire that caused damage in both inside her leased apartment and to common areas and other apartments in an apartment building. What's I think critical is that the trial court as we've highlighted in our brief, the trial court has already found that the tenant, Ms. Gonzalez, is not an implied co-insured under the Philadelphia- Are we bound by that finding? Do you believe we're bound by that finding? I believe the court is because it has not been raised or challenged by Ms. Gonzalez in this appeal. And she has not filed a cross appeal. I believe that that issue has been waived at this point. So I do believe that the trial court's finding at this point is binding. So you believe it's bounding. You do know that we can affirm the trial court on any basis in the record, right? Of course. Of course. I don't think that the defendant has made any attempt to challenge the underlying findings of the trial court. And I don't believe that that's the issue that is before the court today. But I certainly understand that the trial court does have discretion to affirm any findings of the trial court on its own basis. What is our standard of review? It's de novo, right? It is. And so being de novo, that's a question of law. He made a legal conclusion based on the facts, right? And you don't cite any cases, you have that footnote one where you raise this issue, but you didn't cite anything to support you. No. The only thing I would point out, though, Your Honors, is that the damage to the interior of the unit of origin is a part of this claim that's no longer part of this litigation. That claim has been resolved. A final judgment has been entered and that judgment has already been satisfied. So I just wanted to bring that to the court's attention that I believe that that issue has already been addressed and is simply no longer an active issue in this case. So I'd like to begin with a question. You make several arguments as to why we should reverse. And so I'd like to know all the arguments. Some are better than others. I'm sure you think they're all good. Maybe they are. But I think some are better than others. All right. Give me your best one or two. Start with your best. What you think, you know, if you're going to win this case, this is the argument that we really should pay attention to. Absolutely. And I appreciate that. To begin with, I believe that the standard for reviewing this lease to determine the intent of the parties requires an examination of the lease as a whole. I believe that the parties agree on that standard. And I think that when you look at the lease as a whole, there are three specific provisions that express a clear intent for the tenant to be responsible for the damage that she causes. The first is section 19 entitled negligence. That provision is briefed at great length in both parties' briefs. There's also a provision, the security deposit provision, which makes it very clear that the tenant's security deposit can be applied to pay for damage to any of the landlord's property. When does that take effect? It's a security deposit, right? It's for security. Usually that's something either it's returned at the end or it's not returned if there's some damage. Is it correct? Absolutely. And you're right. The important point of that, of raising the security deposit, is to show that unlike what the trial court found, the parties in this lease do express intention that the tenant can be found responsible for damage outside of the walls of her unit. Where is that in the security deposit? It doesn't say that at all. The security deposit provision says that, unlike in section 19, it refers to any damage to the landlord's property. Any land to the landlord's property? Yes. But that doesn't say that with regard to this situation, there may be other provisions that apply and that would be at the end of the lease. Yes, it would. I'm sorry. Go ahead, Your Honor. No, go ahead. So I believe that that provision, it is not controlling here specifically because you're right. The lease did not end on the date of this fire. It is one indication in the lease of the party's intent. Just like the other section dealing with damage caused by the use of a grill, there's no dispute that this was not a damage caused by the misuse of a grill. The point is, there are multiple expressions within the lease that specifically say that the tenant can be found responsible for damage outside of the unit of origin. But again, those are all different situations. And with regard to specifics here, your first argument with regard to the capital P and the small p seems to be a very important one here. And let me just begin by asking you, what words are used to describe Mrs. Gonzalez's, what you called already in our argument, unit of origin? But what are the words in the lease that refer to that apartment? Sure. And I'll readily concede at the outset that the term premises is defined as unit 601, the unit of origin. And again, capital P though. And I think that that's an important distinction. It's a term of art that's defined at the very outset of the lease. And unlike what we were talking about a moment ago with respect to the phrase landlord's property, that term is not defined. So I think it has ascribed to it the general understanding of what the landlord's property would be because it's not otherwise defined in the lease. But aren't we to interpret it in a light most favorable to the non-drafter? If it's undefined. Sure. But I'm not sure that there would be a fair interpretation of the phrase landlord's property that would mean just the unit of origin when we're talking about in the context of a lease. I think that even under those circumstances, I think that the lease provision, or I'm sorry, that the phrase landlord's property, a fair meaning of that phrase would be the landlord's areas, the other units of the building, anything not the tenant's property. Council, I think I would probably be more persuaded if this was a rental of a single family residence. But in light of the fact that there are multiple tenants here, it's difficult for me to a particular unit would also make that particular tenant liable for damages to the common areas. Specifically because the lease does not use that express language. It does not say exterior in any of these provisions that you cite to. Good. Sure. And I think there's an important point. I'd call this the corollary to my best argument, which is that I think that if we start off with the proposition that the trial court found that the tenant is not an implied co-insured, then that eliminates one of the two ways by which I believe the Illinois law sets forth a way to limit liability for a tenant. The other is through some sort of express exculpatory clause or limitation of liability. And I think that's consistent with the case law and the framework set forth in Dix versus LaFramboise, which really builds upon the fire insurance company versus Geeky case. Both of those cases, I think, start off with the proposition that absent an express agreement to the contrary, the tenant is responsible for damage they cause to their landlord. And I think that's really important because I think that the starting off point is not the tenant is exculpated from liability for damage they cause. I think that under these circumstances, the tenant is responsible for any damage caused by her negligence absent some agreement that limits that liability. And I think as our brief points out, there is not a single expression of intent anywhere in the lease, not a single one that limits in any way the tenant's liability for damage she caused. In go to great lengths, I believe, to highlight different circumstances in which the tenant is responsible. And all of those things talk about the unit, the premises, every single one of them and nothing, you know, you pointed to two paragraphs with a small P or it refers to the property of the landlord. But first of all, I want to go back to you. You mentioned the geeky case where there is no lease and it's a house. I mean, there can be a case more different than this one where we have a lease. So we have a contract. So to compare the two, I don't see how they're comparable. How can you, how can we consider geeky, whichever, however you pronounce it, where there is no lease and it was all oral. Sure. And, but your honor, I, and I, I think that, that just like, but that, that same language comes in, uh, comes in, uh, is, is found in the Supreme court case of case of Dix. And frankly, in that case, I, I think that the, that the proposition is true, whether there's a written lease or not. Um, and I guess just the written lease means we have a lease. We have to give, there's a contract. And so we have for the provisions to look at what you're saying is don't look at the contract. It doesn't matter what the contract says. Oh, I, no, I, I think that the, I think that's critical to look at what the contract isn't the contract unambiguous. I want to make sure I heard you. Did you say that the contract unambiguous, right? I believe that the contract is unambiguous. I think that in, in, so there are three places in the lease, as I was talking about earlier, where the, the, the, the tenant is, is held responsible for damage she causes. And just to clarify in this, in the, uh, security deposit provision and in the grill provision, the, the, the phrase premises is not used. It's just not the grill provision has nothing to do with this. Absolutely nothing. That doesn't mean anything just because a grill, I mean, this is not a grill fire. So that doesn't you you're saying we should, uh, you know, what's the relevance of the grill paragraph. I mean, you're saying in some way that brings it in. I'm glad you brought that up because the point is that all of the, the, the case law on this issue that this landlord tenant question, it starts with the premises, the premise of looking at the lease as a whole. And so you can't look at one term in isolation. And I think that you're absolutely right. Also, as we look at the leases and holds all throughout the lease, when it's referring to property outside of the unit, it uses the word property uses elsewhere in the building. It uses common areas. So it's clear that the lease does refer to those as being the other parts of the building and the premises being just that unit. Sure. And I think that if we only focus on provision 19, the negligence provision. And I'm not only focusing on section 19. I'm looking at as what you've asked us to do is that to look at the lease as a whole and throughout the lease, when it's referring to property outside of the unit, it uses those other terms that I just gave. Sure. And, and I think that, I think that it would be, it would be difficult to, so even if we step back and say that section 19 is inapplicable here, irrespective of whether the capitalized P for premises is used throughout. I think that when you look at how the security deposit language is written, it articulates an intent on the party, on behalf of the parties, that there isn't a limitation simply to the, the four walls of her apartment for, for, for damage that she causes to her unit of work to, to out for damage that she causes outside of the unit of origin. I don't think that that, that is the intent that is, that is expressed by a weird way for a contract to the it's somehow you're, you're interpreting it in that particular section and you're interpreting it as broadly as possible. I mean, it's like, it's a mohill and you're making it into a mountain. I mean, if that's a kind of strange, isn't it? If that was the intent, why would it be there? And why would it be stated in the way it's stated rather than come out and say it? Because look, you, your client about your, you have to you're centering, you know, as, as justice Walker said, yeah, we're reading it as a whole and you keep going down to this one little paragraph in this multi-paragraph, the lease. So, so, so you agreed that we could set your argument aside regarding the capital P in the lowercase P. You just agreed that we could put that to a side for a moment. So let's do that. Let's just put that argument to the side and tell us why your clientship. Sure. I think that as I indicated earlier, I think the starting off point is there are two ways in which a tenant can be exculpated from liability for damage. They cause either a finding of an implied co-insured or an express exculpatory clause in the, in the lease. I, I, if the trial court had found that she's not an implied co-insured and there's not a, there's not a provision that, that exculpates or limits the tenant's liability. I think then the. Just, just to stop you just for one second, I'm going to let you go on, but actually there is, and it's section 19. The problem is that with section 19, you believe that it does not do that because of this capital P and lowercase P, but that's the section that the trial judge found to be dispositive. The trial court's finding, I think was a little unclear because he, he touches on the, the security deposit provision, but just recognizes the existence and doesn't, doesn't explain any, it doesn't give any reasoning as to why the security deposit was inapplicable. And I, I, I just, I, I'm not sure how, how we can just disregard the, the, the, the language in, in the security deposit provision as having no, no application to the intention expressed by the parties here. But, but I, I think that the, the, the, the key remains that every provision in this lease talks about, talks about holding a tenant, the tenant responsible for, for her damage. And I think it, it, it reflects a sort of a, a, a impractical perspective to try to say that a, that as the trial court did, that the tenant owed a reasonable duty of care just within the four walls of her apartment. And that it's some, that duty of care somehow ended on the other side of her wall so that she could act irresponsibly and act, you know, negligently outside of the unit of origin. And I, I don't think that that's what the, I don't think that that is expressed in the intent of the parties in the lease. I just, I just don't, I don't think that's, I don't think that is found anywhere in the lease. I think it also reflects, I, I, similarly that the, the tenant, I'm sorry, the landlord makes it very clear that the tenant is supposed to be responsible for her damage. And to say that she's only responsible for damage inside of the unit of origin, or her leased unit, really doesn't take into account the fact that it is, exactly that it is part of a multi-unit, multi-story building. I, I just, it just, I think it defies logic that the landlord would go to great pains to say you're responsible for any damage you cause, but only up to a certain point. I don't believe that. Why is that? Because why should both of them get insurance? Usually in these apartment buildings, this is not a, this contract you would say is standard. It's the Chicago standard residential landlord tenant lease. This is the standard contract. And in the standard situation, you know, the building's responsible for the, the landlord's responsible for everything outside the apartment, so to speak. And the tenant is responsible for his or her unit. And that's why this person got the insurance policy for that unit for any damage that might be caused in that unit. But as far as what you're saying is similar to find through, it's really, it's not, it's, it's, I mean, to me, it's, it's kind of nebulous how we get there. I mean, particularly when you put it aside the P issue. How do we get there? I just, that one, I mean, I, I keep reading in front of me section 19, and I don't see how that somehow opens the door to the whole building. I think that from a fundamental perspective, the fundamental question of the starting off point is, I think that absent an express agreement, exculpating Ms. Gonzalez from damage, I think that the initial, the initial view of the court should be, she is liable unless that she is somehow limited in her, in the express terms of the agreement. I don't think it, I don't think there's a single term. Isn't that reversing the burden? You're saying there's a presumption against her? I'm not saying that. I think that that's what the Illinois Supreme Court and the brief here that I, and this is the Dick's case, the Supreme Court, a tenant is generally liable for that fire damage caused to the lease premises by their negligence. But if the party's intended to exculpate the tenant from negligently caused fire damage, their intent will be enforced. And similarly in Geeky, the established law in Illinois is that in the absence of an express agreement to the contrary, a tenant is liable for damage to the lease premises. That's exactly right. And that's what we're saying. There's a lease here. It is a standard lease. That's all talking about when there isn't any standard lease. That's, that's Geeky. That's when there isn't, but when there is a lease, we have to look and you all agree, you know, you agree at the whole agreement. Okay. I'm going to interrupt you here, counsel. You do still have five minutes for rebuttal, but I'd like for the Thank you, your honors. I want to start off first of all, with the last thing that plaintiff attorney was addressing was the express provision. Illinois law does not state there has to be an express provision. They state the opposite actually. And Dick said that as well. It is true as plaintiff attorney said in the beginning that the lease as a whole has to be addressed. However, plaintiff counsel has addressed only three specific provisions in that lease. Based on the unambiguous terms of this lease and properly interpreting lease as a whole to give effect to the intent of the parties. The circuit decision was correct here. In my brief, I highlight every aspect of this lease, many provisions, which refer to premises as unit. It starts in the very beginning of the lease. Yeah, but doesn't that make the point? Doesn't that make his point? I mean, when I looked at that, I think you had several paragraphs with a capital P, but the fact that the small P, the argument is that's different. And why would they put that small P there? And if you look at the, it's not unreasonable to think that that was another way to describe property outside of the unit because a unit is described as capital P. It is. And that's what you show us over and over and over again. When they want to say that they put the capital P, but there are places where they put the small P in it. If you're right, then why are there small P and not a capital P? I think, frankly, I think the capital P versus small P is neither here nor there in this aspect. Well, but it's an argument they make. I understand. It is here or there because in a contract, we have to look at the words, those specific words used. And premises usually means, I mean, I looked it up in the dictionary just to make sure. Premises is been defined. It's a defined term. The small P is not a defined term. So under the common definition of the law and premises, that would be that whole building. But if you look further in the lease, I'm going to point out sections 22, 23, 24, it differentiates property from the premises. It's section 24 states landlord's title to the property of what the premises forms apart. Capital P. Capital P. But that's the argument is a small P. I understand, but there's no difference. But that's the argument he's making that there is a difference because when they want to say the unit, they say capital P. And you point that out. There's no question in that. There's never, and I would argue there's never anywhere in this lease except for pulling out the section 19 where they use premises small P to refer to the property as a whole. Instead, they use the word over and over again, property. Okay. So taking that argument, let's look at section 22, which states if the premises or any part of the property is destroyed or damaged to the extent that makes it uninhabitable, this lease may be terminated. In such event, and I'm paraphrasing, landlord does not undertake any covenant to repair, restore the premises to a I guess expectation or lack thereof that the property owner will be responsible for making the repairs, even though it's in a common area. Doesn't that extend or at least discuss the common areas as opposed to just the premises? Well, it says it says if the premises are a part of the property is destroyed, it doesn't go to who's responsible for the damage, which is plaintiff's argument in the subrogation action that the tenant is responsible for the damage to the building in its entirety. That section doesn't go to that. It distinguishes between property and premises, which again, premises is the unit. It does not go to who's responsible for that damage in that section, but it does distinguish between premises and property. Which it does again and again in this lease makes that distinction. Nowhere in this lease does it prefer premises as the building as a whole. It simply does not. And again, the court is very clear. Illinois law holds clearly that the lease has to be interpreted as a whole. Every part of that lease has to be interpreted as a whole to give intent to the lease drafted by the plaintiff. So where in the lease does it exonerate the tenant for the tenant's own negligence? It does not exonerate the tenant, but it is not required to have a specific provision exonerating the tenant. The lease has to be read as a whole. And the Supreme Court even said in Dix and its progeny before that, that the lease does not have to contain a specific provision saying the tenant will not be responsible. Instead, the court said, you look at this lease as a whole, every aspect of this. Also pointing out that this lease had a section at the very beginning about insurance. And it said, if tenants required to have insurance, they can fill up this part. This part will be filled up. It's empty. That also, again, look at the lease as a whole and not make it any part of it meaningless, which the court said, don't make any part meaningless. That is important as well. It's not completed. If there was intention of the landlord to make the tenant responsible for damaging the entire building, certainly that section would have been completed. That goes to intent as well. And that's the first page of that lease, and it's empty. What about the question of why it co-insured that the judge ruled against you? Is that relevant at all to what we heard inside today? Well, my motion to dismiss raised the issue of the Dick's case and argued that the tenant was a co-insurer. The court decided against that based on the entire language. I understand it, but my question is, what do we do with it? A council says, it's really not an issue here. It's something we don't need to consider in our decision-making and that it wasn't discussed in the briefs as such. No, it wasn't. So is that then saying that we should not even consider that ruling because it's not relevant to whether we reverse or reaffirm? Well, we believe that a certain court's decision was correct in its ruling. This court does have de novo review and can rule as it chooses to do. We did make that argument, but I do think it's the basis for the cert court's decision. Just a second. You believe that the cert court was correct in finding that Ms. Gonzalez was not an implied co-insurer? Is that what you're telling us? Well, we're only on appeal for this issue. I realize why we're here. We know why we're here. You said earlier that you argued that in your motion to reconsider, you argued that issue. And I understand you didn't brief that issue on appeal. Please let me finish. That you didn't brief that issue on appeal, but are you now telling us that you believe the cert court correctly found that Ms. Gonzalez was not an implied co-insurer? Well, I would not say that I agree with that. I could understand why the court ruled as it did. I could understand that in terms of the lease as a whole and what we were responsible for based on that language of premises. That made it a little bit different than Dick's because that case, there are strong arguments, I believe, to be made why she is a co-insured. And we did argue that- Did you realize that when tenants pay their rent in living in properties like this, they don't have a separate water bill? How do you think the water bill is paid? It's paid with their rent, right? Correct. Correct. The building takes out insurance. How do you think that insurance is paid? The homeowner, the landowner doesn't take responsibility for all of those fees. That's all built into the cost of the rent. Correct. Correct. So again, I just want to be clear though, so that the record is clear. You're telling us that you agree the trial court correctly decided that Ms. Gonzalez was not a co-insured. Is that correct? I don't agree with that aspect of the court's decision. I understand the court's decision. I understand it. And I understand why the court, because of that paragraph 19, which holds a tenant responsible for adjournment to the premises, which is the unit under the view of the lease as a whole, took it a little bit apart from Dick's. My argument in my motion is dismissed. I don't disagree with my argument in that. And I understand I did not do an appeal in that case. I can understand the court's decision, the court's decision in that matter, and believe that there was a basis for that decision. Doesn't mean I don't disagree with it and part of that decision. But just to put a period on it, I just want to understand though, in your mind, apparently, because you didn't brief it or raise it, it is really something that we do not need to address. I think that's something that we need to deal with. Whether we address it or not. So that's my question to you. In your view, is it something we do not need to address in order to affirm? Correct. But that is correct. I don't think the court needs to address it. We didn't appeal it. It is an overview. I can't tell what the court, what to do. We did disagree with the court. We briefed this issue on Dick's originally and the court disagreed about Dick's. The court ruled that based on the lease's whole premises was the unit. And I think there's a basis certainly for that based on a review of the case as a whole. And again, looking at it in its entirety and the intention of the parties. And again, you cannot look at this piecemeal. And I believe that's what plaintiffs argue throughout this matter is that they're pulling out sections, a section regarding a grill, et cetera. And looking at every aspect of this, it's clear and unambiguous that the premises, small or big, is referring to the unit. And it makes sense. Even the security deposit, I'm saying that holds a tenant responsible. I that the tenant paid, received interest back of 23 cents one year. Certainly that is not a lease provision that expects that the tenant is going to pay for damages to the building as a whole. It doesn't, again, reading the lease as a whole and getting the intent of the parties, it makes that very clear. It's supported by not just paragraph 19 that's cited by plaintiff and not just paragraph 10. The entire lease, the intent is clear that premises refers to the unit. And I agree with the court in that regard. I just want to point out that both sides have used the word clear. Both sides have said the lease is very clear. So I just want to point out, it may not be so clear or you both would not be here. You can both say it's clear. It isn't. That's why we are having this oral argument. I understand. I would say this, Your Honor. It's clear. It's unambiguous. And if there is an ambiguity, if the court decides there is an ambiguity, any ambiguity has to be ruled in favor of the tenant because she certainly did not raft this lease. So if there's any ambiguity. But you also agree that there's no limitation of liability clause anywhere in the lease either. That's part of counsel's argument. Correct. And there's no requirement for that. And the law has stated that. Supreme Court stated that in Dix and even before prior to Dix and afterward. There does not need to be an express provision. That's incorrect. The court looks at the lease as a whole. The Supreme Court has said that. That's what they look at. They don't look for express provision. That's incorrect. The law does not require that. The court has said, Supreme Court has said again and again, they look at the lease as a whole. Doesn't matter that it's not express provision saying, look, she's not liable. They look at the intent based on every lease provision. And in this matter, the lease provisions are unambiguous. I don't know if counsel agrees with you that it's that it's so unambiguous to the extent that well, no, he does agree that it's unambiguous, but to the extent that the lease also clearly says that she's for the entire premises and that meaning the entire building. And again, I would argue the lease as a whole makes evident from every provision. As I've listed in my brief, every single one of those provisions, there's not a single one that refers to premises as the property as a whole. Instead, the lease uses different terms. They say property. They say property. They don't say premises. Premises is only used, again, big or small letter. We're referring to the unit. Property is referred to as a property, and that's very different. And again, looking at the lease as a whole to interpret it, that's clear from looking at lease as a whole. We believe cert court was correct in this matter in terms of its ruling, and we ask the court to affirm cert up. Are you stating that where there is a lease that is unambiguous, that we need not be concerned with what's equitable? Well, when it comes to subrogation, or subrogation is an equitable matter. I think, but I believe plaintiff talked about that, and I addressed that as well in my brief. A right of subrogation does not exist in every case, right? It doesn't exist in this case because the landlord cannot subrogate against the tenant based on the lease terms. So, in terms of equity, you know, it just doesn't exist in this case because of the lease terms, a right of subrogation in that regard. Plaintiff addressed other matters in his brief in terms of whether it's equitable or not to have her pay for this. But again, I think that's irrelevant in terms of this. These are lease provisions. This is what the lease says, and if the plaintiff in this case, which is an insurance company that paid the damage, there's no right of subrogation. If the landlord can't subrogate, the insurance company cannot subrogate, and that's where it comes down to in this matter. So, in terms of equity of the lease itself, again, I think those provisions are ambiguous, and in terms of what is considered premises under the terms of this lease. Are there any additional questions from the panel? Okay, thank you very much, counsel. Okay, counsel for appellant, you do have five minutes rebuttal remaining. Great, thank you, justices, and just a couple of points. I do believe that the lease is unambiguous, but I think it's also important to note that the posture that this issue was addressed on was a 619 motion to dismiss from the defendant, and I think that the standard on a motion like that is that the court should interpret all the pleadings and supporting documents, including the lease, in the light most favorable to the non-moving party. So, while I do think that I agree with the general proposition that ambiguities are construed against the drafting party, I think that the procedural posture in this case is important to consider that if there are ambiguities, they should be drafted, they should be considered, or they should be viewed against the movant in this case, which is the tenant. That's one point, but then the other issue, and it's one that was addressed by the justices just a moment ago, is the equities. There is not a concern here that allowing the landlord's subrogating carrier to proceed, again, they would still carry the burden to prove that the fault of the tenant was the cause of its damages. All this motion asks is that as a matter of law, we are at least allowed to have that opportunity to prove the case, but even if the landlord, the plaintiff in this case, can proceed, the amount of this claim is within the tenant's liability insurance limits. So, I think it's a little unfair to just cast this as an insurance company, because I think the reality is, the economic realities, at least, are two insurance carriers trying to determine who really bears the fault for this claim. And I think that's really what this comes down to, despite the fact that Ms. Gonzalez is not a carrier, she does, and I think it's undisputed, that she has liability insurance that covers the full amount of this claim. If the facts were different, and the whole building, you know, a $20 million building, let's say... Just very quickly, you're going through that right now, but that's something that counsel argues in her brief, that that doesn't matter because we don't know what her situation is. She argued that probably at the very end of her brief, that why does that matter, whether or not there's insurance? And I think that's a great question, and I think if that didn't matter, then why would she have insurance in the first place? She has property coverage, but she also, she voluntarily chose to procure not only renter's property damage coverage to cover her contents, she procured liability insurance, and I think that's really important here. Well, do we know that? I mean, the insurance policy is not in the But we really don't have that before us. That's fair, Your Honor, but I do think that it's important to note that, you know, to the extent that there's not a factual record of her insurance, I don't think it's disputed by Ms. O'Rourke that there's a $300,000 liability policy. So, you know, and I don't really think that's germane here, but I do think what's really important is that this is not a situation, I'll represent as an officer of the court, that this would never be a situation where the amount of this damage would be financially crippling to Ms. Gonzalez. It's her, it's within her insurance limits, and I just, I think it's important because if this was a situation where the claim and a potential judgment against her were going to be economically crippling for her, I think there's a very strong equitable argument to be made that she should, that equities do not favor subrogation here, but I think that counsel begs the question that if there were no policy, would we still be here? It's a great question. Well, and on both sides of that ledger, I think if the landlord had said, I'm not going to get insurance for my building, then we're outside of the world of subrogation altogether, and we're just dealing with two parties that are, you know, they have a contract, but then there's property damage and there's no insurance. But the reality is there is a property policy, but then there's also this liability policy that the tenant has. And I suspect, I think your suspicion is right, that if she had no insurance here, this is not a case that would ever be, that would have been filed and would certainly not be before the justices in the first place. But the reality is that there is a policy here and it was procured by the tenant with liability coverage. If she didn't want that liability coverage, she did not have to procure. I think that's at least an important acknowledgement by the tenant that she bore responsibility, potential liability under the lease terms. Well, but now we're going out beyond the four corners of the lease. I'm sorry, say that one more time, Your Honor. We're going behind the four corners of the lease. We look at only the lease. There's no reason, because this is unambiguous, that we would look at that policy. Yeah, and I think it's relevant only for the purposes of considering the equities here, Your Honor. I don't think it bears on the intentions of the parties, strictly speaking. I agree with you that that intent can be gleaned from the four corners of the lease. Thank you. I thank you to this court and thank you to the justices for your consideration. Thank you very much. Any additional questions from the panel? All right. Well, I thank you both for making your arguments today. You were both very strong advocates on behalf of your clients. I think you did an excellent job, giving us quite a bit to consider. It's one thing to read it in the briefs. It's another to actually hear the oral arguments. And so we certainly appreciate the efforts that you put into it. It's practicable. And I thank you very much. And that concludes these proceedings. Thank you, Your Honor.